UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CALKINS PHARMACY, LLC,<br>Debtor. | Chapter 11<br>Case No. 10-11262 |

**NOTICE OF AUCTION SALE**

Pursuant to the order of the United States Bankruptcy Court for the Northern District of New York entered on April 27, 2010, Calkins Pharmacy, LLC is authorized and directed to sell substantially all of its assets pursuant to the terms of an Asset Purchase Agreement (the "Agreement") from Rite Aid of New York, Inc. ("Buyer"); subject to higher and better offers. The terms of the sale are as follows:

<u>Buyer</u>: Rite Aid of New York, Inc. is the proposed Buyer pursuant to the Agreement ("Buyer").

<u>Purchase Price</u>: In consideration of all of the Purchased Assets to be transferred to Rite Aid pursuant to Paragraph 1, above, and the restrictive covenants contained in Paragraph 7, below, Rite Aid agrees to pay to Seller in the manner and time set forth herein, and Seller agrees to accept from Rite Aid the value, as hereinafter determined, of (i) all Saleable Inventory purchased by Rite Aid and computed at Seller's net acquisition costs plus (ii) Two Hundred Forty Thousand Dollars ($240,000.00) (the "Purchase Price").

<u>Purchased Assets</u>:

Seller agrees to sell, transfer, convey, assign and deliver to Rite Aid and Rite Aid agrees to purchase all of the following assets (the "Purchased Assets") at Seller's store at the Location, subject to the terms and conditions set forth herein:

(a) All "Saleable Inventory," which shall be deemed to mean all inventory that is not damaged or so obsolete as to be clearly unsaleable or bears an expiration date within ninety (90) days or less subsequent to the Inventory Date (hereinafter defined). There shall be excluded from the Saleable Inventory any store supplies, compounding chemicals, any non-wholesaler repackaged pharmaceuticals and all inventory exclusions set forth on the attached <u>Exhibit A</u> incorporated herein by reference.

1

(b) All prescription files, records, and data located at the Location ("Files, Records and Data"), in whatever medium maintained.

(c) The trade name "Calkins Pharmacy" or any part or combination thereof, to be assigned to Buyer via execution by the parties of the assignment agreement attached hereto as Exhibit B.

(d) The sale of the Purchased Assets shall be free and clear of all liens and encumbrances, with such liens and encumbrances, if any, attaching to the proceeds of the sale.

Excluded Assets:

Notwithstanding the foregoing, the following assets of Seller (the "Excluded Assets") will be retained by Seller and are specifically excluded from the Purchased Assets:

(a) Cash in register;
(b) Accounts receivable;
(c) Intangible rights, except as set forth in paragraph 1(c);
(d) Security deposits with utility companies or under Seller's Lease;
(e) Furniture, fixtures, equipment, improvements and all other personal property located at the Location (collectively, the "Fixed Assets");
(f) Closed Door Pharmacy Business inventory and prescription files;
(g) Closed Door Pharmacy Business patient records and prescription files;
(f) All computer equipment and hardware at the Location (the "Computer"). the corporate seals, charter documents, minute books, stock books, stock certificates, filing receipts, bylaws, tax returns, books of account or other records having to do with the corporate organization of Seller;

Contact for Seller: Any inquiries regarding the assets shall be directed to Calkins Pharmacy, LLC, c/o Nolan & Heller, LLP, Attn. Francis J. Brennan, Esq., 39 North Pearl Street, Albany, New York 12207, Phone (518) 449-3300.

Offer Deadline. Binding offers to purchase substantially all of the assets to be sold under the Purchase Agreement ("Qualified Offers") may be submitted up to four (4) days prior to the date the Offer Evaluation Process (defined below) is to occur. Each Qualified Offer should include (i) a mark-up of the Purchase Agreement, (ii) detailed information about the party making the Qualified Offer, including its financial and other capacity to consummate the transaction, and (iii) information sufficient to demonstrate that the party making the Qualified Offer will be able to provide parties to assumed contracts and leases with adequate assurance of its ability to perform under them. Although a Qualified Offer may be subject to some contingencies, any such contingencies shall be considered by Seller when evaluating and comparing Qualified Offers. The Offer Deadline is **May 4, 2010 at 5:00 p.m., Prevailing Eastern Time.**

Offer Evaluation Process. Two (2) business days prior to the hearing to approve the Sale Order, a meeting (the "Offer Evaluation Process") will be held at the offices of Nolan & Heller, LLP, counsel to Debtor, if Debtor determines in its discretion that proceeding with the Offer Evaluation Process is appropriate. During the Offer Evaluation Process, Debtor shall evaluate the offers of Rite Aid and any Qualified Offers, including Qualified Offers submitted during the Offer Evaluation Process, provided that (i) initial Qualified Offers shall be considered only if, as determined by Debtor in its sound business judgment, they provide consideration for the proposed purchased assets that exceeds the consideration offered for such assets by Buyer by $15,000.00, and (ii) successive Qualified Offers shall be considered only if they exceed the previous offer by $10,000. Debtor may recess the Offer Evaluation Process from time to time in its discretion in order to assess Qualified Offers or permit participants to alter or increase their Qualified Offers. Debtor may conduct the Offer Evaluation Process as an auction, a series of negotiations or whatever other means it determines in its sound business judgment. The Offer Evaluation Process will be conducted on **May 8, 2010.**

Objections: Objections to the sale, if any shall be filed and served so as to be received by counsel to the Debtor no later than **May 8, 2010 at 5:00 p.m**. prevailing Eastern Time.

Hearing to Approve Sale: The Court shall conduct a hearing to approve the sale on **May 10, 2010 at 3:00 p.m.** prevailing Eastern Time, at the United States Bankruptcy Court, James T. Foley Courthouse, 445 Broadway, Suite 327, Albany, New York.

Debtor's Sound Business Judgment. Debtor shall have the sole and absolute discretion, subject to approval of the Bankruptcy Court, to determine the relative value of any Qualified Offer or Offers, to determine whether to accept or reject any Qualified Offer or Offers, and to determine which Qualified Offer it deems to comprise the highest and best offer available. Specifically, in evaluating competing Qualified Offers, Debtor shall not be limited to price as the determinative factor, but may consider other factors, including, without limitation, the financial qualifications of the party or parties submitting the Qualified Offer or Offers and the likelihood that the proposed transaction will close within a timeframe acceptable to Debtor.

Selection of Highest and Best Bid or Bids. Upon the conclusion of the Offer Evaluation Process, Debtor shall file and serve a supplement to the Motion identifying the highest and best Qualified Offer, as determined in its sound business judgment following the Offer Evaluation Process, and requesting approval of the sale of the Purchased Assets pursuant to Sections 363 and 365 of the Bankruptcy Code to, as the case may be, Rite Aid or such other party submitting such Qualified Offer. The Bankruptcy Court shall consider the Purchase Agreement and/or any Qualified Offers received and disclosed in the supplement to the Motion at the hearing on the sale approval on an expedited basis.

Assumption of Executory Contracts and Unexpired Leases. As soon as practicable, but no later than seven (7) days after the entry of the within order, the Debtor will file a schedule of cure obligations (the "Cure Schedule") for the contracts and leases that may be assumed and assigned (the "Assumed and Assigned Agreements"). The Cure Schedule will include a description of each Assumed and Assigned Agreement potentially to be assumed and assigned under the Agreement or other agreement with the successful bidder and the amount, if any, the Debtor believes is necessary to cure such agreements pursuant to section 365 of the Bankruptcy

Code (the "Cure Amounts"). A copy of the Cure Schedule, together with a notice (the "Assumption and Assignment Notice"), will be served on each of the non-debtor parties listed on the Cure Schedule by first class mail on the date that the Cure Schedule is filed with this Court. Any objections to the assumption and assignment of any executory contract or unexpired lease identified on the Cure Schedule, including, but not limited to, objections relating to adequate assurance of future performance or to the Cure Amounts set forth on such schedule, must be in writing, filed with this Court, and be actually received on or before **May 4, 2009 at 5:00 p.m.** by the Debtor, c/o Nolan & Heller, LLP (Attn: Francis J. Brennan, Esq.), 39 North Pearl Street, Albany, New York 12207. Any objection to the Cure Amounts shall set forth the specific default or defaults in any Assumed and Assigned Agreements and set forth the specific monetary amount that differs from the amount (if any) specified by the Debtor in the Cure Schedule.

Cure Amounts. If no objections are received, then the Cure Amounts set forth in the Cure Schedule will be binding upon the non-debtor parties to the Assumed and Assigned Agreements for all purposes in this Chapter 11 case and otherwise, and will constitute a final determination of the total Cure Amounts required to be paid by the Debtor in connection with the assumption and assignment of the Assumed and Assigned Agreements. In addition, all counterparties to the Assumed and Assigned Agreements will (a) be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts with respect to the Assumed and Assigned Agreements, and the Debtor and the successful bidder will be entitled to rely solely upon the Cure Amounts set forth in the Cure Schedule, (b) be deemed to have consented to the assumption and assignment, and (c) be forever barred and estopped from asserting or claiming against the Debtor or the successful bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed and Assigned Agreements or that there is any objection or defense to the assumption and assignment of such Assumed and Assigned Agreements.

Objections to Cure Amounts. Where a non-debtor counterparty to an Assumed and Assigned Agreement files an objection asserting a cure amount higher than the proposed Cure Amounts (the "Disputed Cure Amount"), then (a) to the extent that the parties are able to consensually resolve the Disputed Cure Amount prior to the Sale Hearing, and subject to the successful bidder's consent to such resolution, the Debtor shall promptly provide the Creditors' Committee and other parties in interest notice and an opportunity to object to such proposed resolution or (b) to the extent the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then the amount to be paid under section 365 of the Bankruptcy Code with respect to such Disputed Cure Amount will be determined at the Sale Hearing (or at such other date and time as may be fixed by this Court). At the election of the Debtor, the executory contract which is the subject of a Disputed Cure Amount may none the less be assigned to the successful bidder at the closing of the asset sale transaction free and clear of the objection so long as the amount relating to the Disputed Cure Amount is escrowed by Debtor. Any party failing to object to the proposed transactions shall be deemed to consent to the treatment of its executory contract and/or unexpired lease under section 365 of the Bankruptcy Code.

75507

4

## Exhibit A

The following merchandise shall not be included in inventory purchased by Buyer:

1. All merchandise that will become outdated within 90 days following the Inventory Date (including Rx Department merchandise).
2. Repacked or misbranded pharmaceutical merchandise.
3. Thalomid, Isotretinoin (including brand names: Accutane, Amnesteen, Claravis, Sotret)
4. Compounding chemicals.
5. The following label merchandise: Store Imprint; Rexall; McKesson; Rugby; Reese Chemical; Republic Drug; Goldline; Valu-Rite, Abel Labs.
6. Jewelry, key chains and watch bands.
7. Key blanks and key machines.
8. Cassettes and CD's
9. Loose, uncarded make-up (Wet N Wild).
10. Soft goods - sweaters, shirts and clothing.
11. Tools, hardware and paint supplies.
12. Carpet Magic or Rug Doctor.
13. Giftware, china, ceramics and similar items.
14. Mylar Balloons (capped at $100.00).
15. DME, convalescent aids.
16. Elastic goods and braces (other than Futuro and Ace).
17. Obsolete clearance merchandise.
18. Magazines and Books (should be returned to supplier).
19. Items on Consignment.
20. Toys.
21. Sun Glasses, Reading Glasses.
22. Fragrances

Exhibit B
Assignment Agreement

THIS ASSIGNMENT AGREEMENT, is made and entered into the 22nd day of April, 2010 by and between CALKINS PHARMACY, LLC ("Assignor"), a New York Limited Liability Company, having an address of 57 Remsen Street, Cohoes, New York 12047, and RITE AID OF NEW YORK, INC. ("Assignee" or "Rite Aid"), a New York corporation having an address of P.O. Box 3165, Harrisburg, Pennsylvania 17105, Attention, Secretary.

Pursuant to the terms of that certain Purchase Agreement dated as of April 22, 2010 (as it may be amended from time to time, the "Purchase Agreement"), by and between Assignor and Assignee, Assignor desires to assign all right, title and interest of Assignor in and to the trade name "Calkins Value Plus Pharmacy" to Rite Aid, and Rite Aid is willing to accept such assignment.

Accordingly, Assignor and Rite Aid hereby agree as follows:

1. Effective as of the Inventory Date (as defined in the Purchase Agreement), Assignor hereby assigns, conveys and transfers to Rite Aid all right, title and interest of Assignor in and to the trade name "Calkins Value Plus Pharmacy."

2. Effective as of the Inventory Date, Rite Aid hereby accepts the assignment of all right, title and interest of Assignor in and to the trade name "Calkins Value Plus Pharmacy."

IN WITNESS WHEREOF, the undersigned corporations have caused this instrument to be executed in their corporate names, under seal, by their duly authorized officers.

WITNESS/ATTEST:

_Karen A. Roberts_

ASSIGNOR:
CALKINS PHARMACY, LLC

By: _____
Manning-Delmonico Enterprises, Inc., as Sole Member of Assignor, by and through Kathleen Manning, its Sole Shareholder and Officer

WITNESS/ATTEST:

_M.C. Braykovich_

ASSIGNEE:
RITE AID OF NEW YORK, INC.

By: _____
T. Lawrence Gelman
Vice President and Asst. Secretary